UNITED STATES,

        Plaintiff,

                              Case No. 23-cr-231-pp

    v.

MARCELLUS L. JONES,

        Defendant.

## ORDER OVERRULING DEFENDANT'S OBJECTION (DKT. NO. 41), ADOPTING JUDGE DUFFIN'S RECOMMENDATION (DKT. NO. 40) AND DENYING DEFENDANT'S MOTION TO SUPPRESS (DKT. NO. 30)

The defendant filed a motion to suppress the firearm found in his glove compartment after his November 30, 2022 arrest. Dkt. No. 30. Magistrate Judge William E. Duffin issued an order denying the defendant's motion for an evidentiary hearing and a recommendation that this district court deny the motion to suppress. Dkt. No. 40. The defendant has objected to the recommendation, dkt. no. 41, and the government has responded, dkt. no. 42. Because the search was lawful under various exceptions to the Fourth Amendment, the court will adopt Judge Duffin's recommendation and deny the motion to suppress.

## I.  Legal Standard

Section 636(b)(1)(B) of Title 28 allows a magistrate judge to make proposed findings of fact and recommendations to a district judge in criminal cases. See also Federal Rule of Criminal Procedure 59(b)(1) (allowing the

Case 2:23-cr-00231-PP    Filed 09/09/24    Page 1 of 33    Document 44

district court to refer motions to suppress evidence to magistrate judges and requiring the magistrate judge to enter on the record a recommendation for disposition). Section 636(b)(1)(C) allows parties to object to such recommendations within fourteen days; the district court then must make a *de novo* determination of the portions of the report or the specific proposed findings or recommendations to which a party objects. "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.; Fed. R. Crim. P. 59(b)(2), (3). Fed. R. Crim. P. 59(b)(2) requires objections to be "written" and "specific."

## II.     Relevant Facts

On November 19, 2022, officers responded to a call from Shanita Childs, the defendant's ex-girlfriend. Dkt. No. 30-1. The call for service "was investigated to be a theft from person Domestic Violence related." Id. at 1. Although Childs was not on the scene when the officers arrived, she explained over the phone that the defendant had entered her house with a key, argued with her, then "snatched" her yellow cellphone with a pink case away from her. Id. She said that as she tried to drive away in her white Chevy Malibu, the defendant threw a glass jar at the vehicle, breaking the glass on the driver's door window. Id. at 2. Officers verified that Childs's black unknown brand puffy winter jacket was missing; in the pockets were a debit card and a QUEST card. Id. Childs said that the defendant had used a weapon or threatened her with a weapon in the past. Id. The officers did not ask Childs to report to the station or to provide images of the damage. Id.

2

Eleven days later—on November 30, 2022 at 2 p.m.—Milwaukee Police Officer Daniel Sida observed a white Chevy Malibu traveling eastbound on W. Oklahoma Avenue (east of S. 84th Street) with obstructed registration stickers. Dkt. No. 30-2 at 1. Sida conducted a DOT check on the plate and learned that the plate did not list to the vehicle. Id. Sida pulled the driver over in front of 8101 W. Oklahoma Avenue. Id. Based on statements in the defendant's brief and the body camera footage, it did not appear that the area had parking limitations posted. Dkt. Nos. 30 at 1; 31-2.

The defendant, who was the sole occupant of the vehicle, told Sida that the vehicle belonged to his girlfriend (whom he identified as Shanita Childs) and that she had not yet registered the vehicle. Dkt. No. 30-2 at 1. Although the defendant could not locate any paperwork showing ownership, Sida noticed a ticket in the vehicle and asked whether the information would be on the ticket; the ticket had been issued to Childs. Dkt. No. 31-2 at 1:11-1:30. Sida also asked for a driver's license or ID; the defendant responded that he had an ID. Id. at 1:31-1:40. Sida asked if the defendant had a driver's license and the defendant responded, "no." Id. Sida collected information from the defendant— phone number and address. Id. at 1:40-1:58.

At 2:03 p.m., Sida ran a DOT check revealing that there was a warrant from Dane County for the defendant's arrest in Case No. 2021CM001103 (charging him with unlawful phone use—threatening harm). Dkt. No. 30-2 at 1. The outstanding warrant had been issued on March 24, 2022, when the defendant did not appear for a hearing. Id. Sida also observed that the

3

defendant had "two active Milwaukee Police Department Suspect Alerts for cases #22-323-0084 (Theft-Movable Property fr. Person/Corpse, which occurred on 11-19-2022) and 22-288-0134 (burglary party to a crime and disorderly conduct DV-related which occurred on 10-15-2022)." Id.

Sida called for backup, and Officers Justin Marzello and Ahnoki Doxtator arrived at 2:07 p.m. Id. While waiting for the other officers to arrive, Sida learned that the white Chevy Malibu was the object of a crime for a case ending in #0084. He also learned that, not only did the plate on the Malibu not list to the vehicle, but the VIN of the vehicle did not list to Childs. Dkt. No. 31-2 at 17:54-18:05. Sida told the defendant that he had a revoked license. Id. At 2:08 p.m., Sida arrested the defendant, patted him down and placed him in handcuffs in the rear of Sida's squad car. Dkt. No. 30-2 at 1.

At 2:10 p.m., Sida returned to the Malibu and conducted a brief search. Ex. 2 at 10:00. He retrieved a carton of cigarettes for the defendant, checked the center console and found the iPhone in a pink case. Id. at 10:30-10:35. He leaned across the driver's seat, opened the glove compartment and immediately saw a Smith & Wesson JCP "40 semi-automatic handgun with a carved off serial number and empty magazine." Id. at 10:38; Dkt. No. 30-2 at 1. Sida ran a records check confirming that the defendant had been convicted in Milwaukee County and in Wisconsin for armed robberies. Dkt. No. 30-2 at 1. Sida wrote in the report that this firearm "was inventoried under MP INV #22043791_1 and the magazine under _2." Id. As for the yellow iPhone 11 with the pink case, Marzello later told Sida that phone had been described as stolen

4

in the case ending in #0084. Id. Sida also found a black purse on the passenger floor containing debit cards under the name "Shanita Childs." Id. Sida removed the phone and the black purse Id. The report states that the purse and contents were inventoried under safekeeping with Childs as the claimant. Id.

Sida told the other officer to call in a tow for safekeeping. Id. at 12:32-12:36. Sida then told the defendant that the vehicle would be towed to the City of Milwaukee tow lot. Id. at 13:39-13:48. The defendant asked if someone could come and get the Malibu, but Sida told him no because it wasn't registered. Id. at 13:50-13:57.

Another officer asked Sida to confirm that the plates did not match the vehicle; Sida confirmed and asked that it be towed. Id. at 14:57-15:08. Sida told the other officer that the vehicle would be towed because it was not registered. Id. at 16:31-16:33.

Sida told the defendant that the plate didn't list to the vehicle and the VIN didn't match the woman whom the defendant claimed owned the car. Id. at 17:39-18:39. Sida explained to the defendant that the woman would need to get the vehicle registered and that it would be difficult to retrieve it from the tow lot because the vehicle was registered to "some other guy." Id. Sida issued the defendant a citation for driving an unregistered vehicle. Dkt. No. 31 at 5.

**III.    Defendant's Motion to Suppress**

   A.    <u>Defendant's Motion to Suppress</u> (Dkt. No. 30)

   In his motion to suppress, the defendant argued that officers initiated a traffic stop on November 30, 2022 because he was driving a vehicle with obstructed registration stickers. Dkt. No. 30 at 1. Characterizing the search of the car as a search incident to arrest, the defendant argued that the court must consider (1) whether it was reasonable to believe that the defendant had access to the interior of the vehicle at the time of the search or (2) whether it was reasonable to believe that the vehicle contained evidence of the crime of his arrest. <u>See</u> <u>Arizona v. Gant</u>, 556 U.S. 332 (2009). The defendant said that he had no access to the Malibu because before the search was conducted, he had been arrested and handcuffed and was sitting in the back of the squad car. <u>Id.</u> at 6. The defendant argued that there was no reasonable basis to believe that officers would find in the vehicle evidence related to his arrest. <u>Id.</u>

   The defendant also asserted that the automobile exception does not apply because the officers lacked probable cause to believe the vehicle contained evidence of any criminal activity. <u>Id.</u> at 8 (citing <u>United States v. Edwards</u>, 769 F.3d 509, 514 (7th Cir. 2014)). He argued that the officers lacked probable cause to believe that there would be evidence of a revoked license; the Dane County bench warrant had been issued for unlawful phone use nearly fifteen months before the arrest; and the two suspect alerts "likely did not provide detailed information to the officers regarding the underlying theft and

6

burglary offenses." Id. at 10. At the time the defendant filed the motion, he represented that neither party requested an evidentiary hearing. Id.

B. Government's Response (Dkt. No. 31)

The government responded that the search was permissible under several exceptions to the warrant requirement. Dkt. No. 31 at 4. First, the government maintained that the search was justified as a lawful search incident to an arrest because it was "entirely reasonable to believe" that evidence for at least some of the offenses for which the defendant was arrested would be found in the vehicle. Id. at 5. It emphasized that the defendant had been pulled over for operating a car that didn't have a valid registration; it asserted that the defendant had been unable to produce documentation establishing ownership, and the VIN didn't match to the defendant—or Childs—placing the ownership of the vehicle in question. Id. The government contended that the suspect alerts arose from the defendant entering Childs's home and taking things without her permission. Id. It cited an unpublished Seventh Circuit opinion which had stated that "evidence of a vehicle's ownership and registration is regularly contained in the glovebox of a vehicle." Id. (citing United States v. Travis, Case No. 22-3098, 2023 WL 7271076, at *2 (7th Cir. Nov. 3, 2023)). The government asserted that it was reasonable for Sida to search the glovebox for registration information, which could reveal whether the defendant knowingly had operated an unregistered car. Id.

The government conceded that the defendant might be correct that it was "unlikely that evidence relevant to [the defendant] driving with a revoked

7

license or the unlawful phone use case underlying the arrest warrant would be found in the vehicle." Id. at 7. The government argued, however, that the suspect alerts were more recent and "concerned" Childs—the person the defendant claimed owned the Malibu—as the victim. Id. at 7. The November 19, 2022 alert—issued eleven days before Sida pulled the defendant over—was for theft of movable property (the defendant allegedly taking Childs's phone), and Sida knew that the Malibu was an "object of interest" in that incident. Id. Though the defendant had asserted that these allegations weren't sufficient to give Sida reason to believe that evidence relating to that alert would be found in the car, the government emphasized that at the time of the arrest, the defendant claimed that the Malibu belonged to Childs and produced a document—the traffic ticket—connecting Childs to the vehicle. Id. The government argued that these facts gave Sida reasonable suspicion that the car might contain evidence regarding the property stolen from Childs (which property might well have been the Malibu). Id.

The government next argued that the search was permissible under the automobile exception, which allows law enforcement to search a vehicle without a warrant if they have probable cause to believe that it contains evidence of criminal activity. Id. at 8 (citing United States v. Page, 870 F.3d 693, 702 (7th Cir. 2017)). The government argued that officers had probable cause to search the car for vehicle registration and ownership information because the VIN did not match either the defendant or Childs, providing probable cause to believe that there might be registration/ownership

8

information in the car that would shed light on whether the defendant had been unlawfully operating an unregistered vehicle. Id. It asserted that even if the car had contained information showing that Childs owned the car, probable cause still would have existed because of the alerts alleging that the defendant had been involved in two incidents of theft from Childs in the past few weeks. Id.

Third, the government argued that that the search was a permissible inventory search under United States v. Cartwright, 630 F.3d 610, 613 (7th Cir. 2010). Id. at 9. It explained that under the Milwaukee Police Department's Standard Operating Procedure, a vehicle is towed if the owner is arrested pursuant to a valid warrant. Id. (citing Dkt. No. 31-3, SOP 610.15(B)(4)). It explained that a Milwaukee ordinance decrees that unregistered vehicles may not be located on a street and law enforcement may have such a vehicle impounded. Id. at 10; Milwaukee City Ordinance Traffic Code 101-24.7(2)(a), (3)(a)). It recounted that another standard operating procedure allows for a safekeeping tow when ownership is in question. Id. (citing Dkt. No. 31-3, SOP 610.20(B)(2)). The government recounted that standard operating procedure 610.05 lays out the procedure for an inventory search of a vehicle triggered by a police tow; such a procedure includes a search of the passenger compartment, glove box and trunk and any "property of apparent value shall be removed from the vehicle and recorded on an Inventory Report." Id. at 10-11 (citing Dkt. No. 31-3, SOP 610.05(B)). The government explained that Sida had impounded the Malibu because the defendant (the driver) was under arrest and

the car was unregistered and so could not be operated lawfully. Id. at 10. The defendant was the only driver at the scene—he didn't have a valid driver's license and was under arrest—and the city ordinance said that the unregistered vehicle could not be parked on the street; the government argues that the officers had little alternative but to have the car towed. Id. at 11. (The government also notes that Child's relationship to the car was unclear, given that the VIN was listed as registered to someone other than her and the plates didn't match the car. Id. at 11-12.) The government argued that because the vehicle had to be towed, standard operating procedures required that it be searched. Id. at 12.

The government conceded that while standard operating procedures require the content of a searched vehicle be listed on an inventory report, it "is not entirely clear whether the report Officer Sida prepared appears on the specified form." Id. at 13. But the government argued that writing the inventory on the wrong form would not invalidate the search; it asserted that this would have constituted a minor deviation from department policy, not an indicator of an unreasonable search. Id.

Finally, the government argued that the discovery of the gun was inevitable once officers pulled over the defendant, who had a warrant for his arrest and whose vehicle had to be impounded. Id. at 14. The government stated that an evidentiary hearing was not required (even though the defendant had not requested one at that time) because there were no facts that would justify relief. Id. at 15. The government argued that the entire encounter and

search were recorded by Sida's body camera, which provided sufficient evidence to evaluate the search and established without question that the vehicle would have been towed and inventoried. Id. at 15-16.

    C.    <u>Defendant's Reply</u> (Dkt. No. 34)

The defendant reiterated that one of the bases for the search-incident-to-arrest exception is whether the person being arrested is within reaching distance of the passenger compartment at the time of the search and reiterated that the defendant was not only not within reaching distance, but handcuffed and in the squad car when the search took place. Dkt. No. 34 at 2. As to the other basis for a search incident to arrest—that it is reasonable to believe the vehicle contains evidence of the offense of arrest—the defendant maintained that there could be no evidence supporting operating an unregistered vehicle that would be found in a search of the Malibu. Id. at 2. The defendant cited Wis. Stat. §341.04(1), which says that to prove the offense of driving an unregistered vehicle, the state must show that a person was operating a car and that the car was not registered. Id. The defendant says that the officers already knew he was driving the car—Sida had seen him doing so—and that they already knew from their records that the car wasn't registered. Id. at 2-3. He says that government has provided no explanation of "what further evidence could or would be found that supported the offense of driving a car without registration." Id. at 3.

The defendant argues that, regarding the October 15 and November 19, 2022 suspect alerts, all the police knew about those alerts were "generic

offense titles," without offense details, names of complaining witnesses or descriptions of the stolen items. Id. at 3. He asserts that those generic titles gave the officers no reasonable basis to believe that evidence of the offenses would be found in the car. Id. The defendant also asserts that neither an arrest warrant nor a suspect alert shows that the defendant actually committed the offenses, or that he stole anything from Childs. Id. He says that the officers would have had no way to know what had been stolen from Childs. Id. at 4. He asks the court to hold an evidentiary hearing if it plans to rely on the search-incident-to-arrest exception to the warrant requirement as the basis for denying his motion. Id.

The defendant agrees that the automobile exception requires probable cause to believe that the car contains evidence of criminal activity. Id. He asserts, however, that the officers did not have even reasonable suspicion that the defendant had committed a crime, much less probable cause to believe that the car contained evidence of criminal activity. Id. at 5. He reiterates that the government has not explained what further evidence of the vehicle's lack of registration officers could have expected to find in the car. Id. As for the government's argument that it was not clear who owned the car, the defendant says that wouldn't matter "in the traffic violation of driving an unregistered car." Id. He says that the officers had no probable cause—or reasonable suspicion—to believe that the car was stolen, because the defendant "promptly informed the officers that the car belong to his girlfriend and was unregistered because she just bought it." Id. He emphasizes that there is no evidence that

the car had been reported stolen, no evidence that he didn't have permission to drive the car and no evidence contradicting his statement that his girlfriend had just purchased the car and hadn't registered it. Id. As for the suspect alerts, the defendant reiterates that they contained no details of what the defendant did to warrant their issuance, and that even if the police had the details, they would have learned that in the November 2022 incident, Childs had told police that she "drove" away from the defendant (which the defendant interprets as meaning that she had the Malibu). Id. at 6. And, he says, officers had a copy of a citation issued to Childs between the date of the suspect alert and the date of the defendant's arrest. Id.

The defendant argues that the officers failed to follow any of the MPD's procedures for a valid inventory search. Id. at 7. He says they did not complete a tow inventory report, did not complete an inventory log, did not advise the parking information desk of the inventory logged and the location. Id. at 8. He says they did not follow the policy that required them to show that the defendant was the owner (which they knew he wasn't) or that the car could not be legally parked (he argues that it was). Id. He disagrees that the ownership of the car was in question, reiterating that it had not been reported stolen and that he told police the car belonged to his girlfriend. Id. He says that an unregistered car is not the same thing as a stolen car. Id. And, he says, officers saw Childs's personal belongings in the car, further demonstrating that ownership was not in question and that the owner of the car was Childs. Id. at 8-9. The defendant asserts that the officers weren't interested in conducting a

13

valid inventory search, and says that the government's argument amounts only to a contention that they *could have* conducted an inventory search had they followed the required procedures. Id. at 9.

Finally, with respect to inevitable discovery, the defendant asserts that the government must prove inevitability by a preponderance of the evidence. Id. at 10. He reiterates that the officers did not have a basis for an inventory search, and says that even if they had, they did not follow the procedures required for such a search. Id. at 10-11. He implies that because the officers did not follow the procedures for conducting a valid inventory search, the discovery of the gun was not inevitable. Id. at 11.

D.    Defendant's Requests for an Evidentiary Hearing

In the last sentence of the reply brief, the defendant said that he "seeks an evidentiary hearing to resolve material factual disputes in this case." Dkt. No. 34 at 11. He did not condition this request on the court's reliance on the search-incident-to-arrest exception; he asked for an evidentiary hearing, full stop.

On June 3, 2024, Judge Duffin issued an order requiring the defendant to comply with Criminal Local Rule 12(c), which applies to requests for evidentiary hearings. Dkt. No. 35. Judge Duffin observed that in the motion to suppress itself, the defendant had said that the parties did not think they needed an evidentiary hearing, but that they'd be better situated to make that judgment after the government had filed its response brief; the defendant asked leave to determine the need for an evidentiary hearing within three days of the

14

government filing its response. Id.at 1. Judge Duffin pointed out that this procedure was not consistent with the requirements of Criminal Local Rule 12(c) (E.D. Wis.), id. at 1, and observed that the defendant also had not complied with Rule 12(c) when, in his reply brief, he requested an evidentiary hearing, id. at 2. Judge Duffin ordered the defendant to file a Rule 12(c) statement by June 6, 2024. Id.

In his Rule 12(c) statement, the defendant identified the issues he believed warranted a hearing. Dkt. No. 38. The defendant wanted a hearing to address the ownership issues regarding the Malibu, specifically whether Childs owned the vehicle and had allowed the defendant to drive it. The defendant wanted to explore whether the ticket in the vehicle established that Childs owned the Malibu, whether the defendant was on the phone with Childs at the time of the stop (reflecting her consent for him to use the car), that the vehicle was not reported stolen, whether there was damage to the car (supporting an inference that it had been stolen or was being operated without consent) and whether police regularly encounter unregistered vehicles that are not stolen. Id. at 3-4. As for the suspect alerts, the defendant wanted evidence regarding whether at the time of the stop the officers had reviewed the police reports underlying the alerts, whether the only information the officers had about the alerts came from the alerts themselves and whether the alerts provided sufficient information about the underlying offenses to allow police to develop probable cause to search the care. Id. at 4-5. He also wanted to obtain evidence indicating that the police would not have impounded the vehicle had they not

15

found the firearm, that the MPD does not necessarily impound vehicles for invalid registration, that Childs had been pulled over in the vehicle days before but had been allowed to drive away with a citation, that the vehicle was or could have been legally parked and that the police did not follow standard procedures for a safekeeping tow. Id. at 5-6.

The government opposed the request for an evidentiary hearing, arguing that there are no material facts in dispute. Dkt. No. 39. It argued that none of the facts about which the defendant wanted evidence were related to his motion to suppress. Id. at 2. It said that the ownership of the car was irrelevant because the record established that the officers had access to the registration and title information showing that the VIN was associated with an individual other than Childs. Id. at 2. It stated that there was *not* a dispute as to whether the defendant had provided officers with a traffic ticket in Childs's name, because the government had said as much in its opening brief. Id. The government asserted that at the time of the search, the ownership of the vehicle hadn't been established, so any subsequent evidence of ownership would be irrelevant. Id. The government argued that it is irrelevant whether the Malibu had been reported stolen or whether officers often encounter unregistered vehicles that are not stolen, given the Seventh Circuit's decision that after arresting someone for operating a vehicle whose ownership and registration is at issue, officers may search the glove compartment. Id. at 3. As for the defendant's assertion that the vehicle showed no damage that might hint at theft, the government says that damage is irrelevant—the car bore a

plate that did not match it and was not registered. Id. It also argues that the body camera footage shows the condition of the vehicle. Id. It recounts that that footage shows that the driver's side window had a hole in it and was shattered. Id. at 3-4.

Regarding the suspect alerts, the government acknowledges that the record isn't clear about what Sida knew about the suspect alerts at the time of the search, but it says that Sida wrote in his report that he knew that the defendant had a suspect alert for theft of movable property and that the Malibu was an "object of crime" for the suspect alert. Id. at 5.

Finally, the government argued that there was no dispute that the car had to be towed because there was no driver at the scene available to operate the vehicle and it was not registered. Id. at 5-6. The government says that perhaps sometimes unregistered vehicles aren't towed, there are drivers available to drive the car away or the ownership of the car isn't in question, but it argues that in *this* case, there was no driver for the Malibu at the scene and it had a VIN number that was not associated with the driver *or* the purported owner. Id. at 6. And as for the defendant's argument that he needed evidence regarding whether the car could be legally parked, the government reiterated its argument that there is a Milwaukee ordinance prohibiting an unregistered car from being parked on a street in the city. Id. The government asserted that there was no dispute as to whether the officers followed MPD's safekeeping tow procedures, reiterating that any failure to fill out the proper paperwork is

17

irrelevant to the question of whether it was reasonable for the officers to conduct an inventory search. Id. at 7.

III.    **Judge Duffin's Report and Recommendation (Dkt. No. 40)**

Judge Duffin denied the defendant's request for an evidentiary hearing and recommended that the court deny the defendant's motion to suppress, opining that the search was lawful. Dkt. No. 40.

Judge Duffin agreed that the defendant's exchange with Officer Sida raised a genuine question as to who owned the car, but he agreed with the defendant that the government had not explained how evidence relating to the Malibu's ownership would be relevant to the offense of operating an unregistered vehicle. Id. at 8. However, he agreed with the government that the search qualified as a search incident to defendant's arrest for the November 19, 2022 suspect alert. Id. at 9. Judge Duffin reasoned that the defendant's interaction with the police put the ownership of the car in question and that, paired with Sida's knowledge that the Malibu was an object of crime for the November 19, 2022 theft, provided "sufficient reason for the police to believe" that the Malibu could contain evidence relevant to that offense. Id. at 9-10.

Judge Duffin also found that the search fell under the automobile exception to the Fourth Amendment because of the November 19, 2022 suspect alert. Id. at 10-11. Judge Duffin wrote:

> [T]he police did have probable cause to search the Malibu based on the suspect alert pertaining to the November 19, 2022, theft. Various facts would lead a reasonably prudent person to believe that evidence related to the theft would be found in the Malibu. Despite [the defendant's] claim that the Malibu belonged to [Childs], the police learned that the VIN did not match to her and

18

that it was listed as an object of crime in the suspect alert for the November 19, 2022, theft. The Malibu's ownership was reasonably in question, and police had probable cause to believe that evidence pertaining to that theft would be found in the Malibu, or that the car itself was stolen. As a result, the search also falls under the automobile exception.

Id. at 11-12.

Judge Duffin found that the decision to tow the Malibu was reasonable because the car was unregistered, could not be legally parked and the ownership of the vehicle was in question. Id. at 14. He noted that the defendant had not identified any material factual disputes relating to whether there was a basis for towing or conducting the inventory search. Id. at 14-15. He found that the defendant's argument that the police did not follow *any* of the relevant procedures governing inventory searches was an overstatement. Id. at 1. While he acknowledged a lack of evidence that the police had completed the required forms, he observed that Officer Sida's incident report listed the items recovered and that Sida kept his body camera on during the search, reflecting that he briefly searched the passenger compartment, glove box and trunk. Id. at 16 (citing Dkt. No. 31, Ex. 2 at 10:00-14:58)).

Judge Duffin did not address the government's inevitable discovery argument.

**IV. Objection and Response**

A. <u>Defendant's Objection</u> (Dkt. No. 41)

The defendant objects to Judge Duffin's finding that the search was valid as incident to his arrest because Judge Duffin relied on the November 19, 2022 suspect alert. Dkt. No. 41 at 2. He says that this finding "requires more than

19

what was in the record." Id. He argues that the suspect alerts "related to incidents that occurred weeks or months before" he was pulled over. Id. at 4. He argues that the November 19, 2022 alert related to an incident that occurred eleven days earlier, and that while it related to an incident that involved the Malibu, it did not say that the defendant had driven or been present on that date. Id. He maintains that it is "unclear" what information the officers had about the November 19, 2022 incident from the alert. Id.

The defendant objects to the application of the automobile exception on similar grounds. He says that the suspect alert "likely did not provide detailed information regarding the underlying theft, thereby providing no basis to conclude that evidence of that offense would be found in [his] car." Id. at 6. He asserts that even if the officers had specific information regarding the suspect alerts, the alerts would not have provided probable cause because of the amount of time that had passed between the November 19, 2022 incident and the traffic stop. Id. The defendant argues that ownership of the Malibu never was in question because he told the officers the vehicle belonged to Childs and it never had been reported as stolen. Id.

The defendant objects to the finding that the search qualified as a lawful inventory search because the officers did not complete a Tow Authorization Report or corresponding inventory log, nor did they advise the parking information desk of the inventory logged and the location as required by MPD policy; he also reiterates that he didn't own the vehicle and that the vehicle had not been reported as stolen. Id. at 7. The defendant says that the officers'

20

comments at the scene that they were most likely going to book and then release him "are indicative of the mindset that this was a routine traffic stop that did not require the towing of a vehicle." Id. at 8.

Finally, the defendant again requests an evidentiary hearing. Id. He says that there are "several material facts that are disputed and/or must be developed for the record," then lists:

> First, the officers who stopped [him] did not have and had not reviewed the complete police reports of the November 19, 2022 incident underlying the suspect alert. Second, the suspect alerts did not provide sufficient information regarding the underlying offense for police officers to develop probable cause to search the car. There is no evidence in the record, for example, that the suspect alert informed the officers, specifically, of what property [the defendant] was accused of taking.
>
>     \*   \*   \*   \*
>
> . . . there is a dispute of whether the police would have impounded the vehicle absent finding the firearm. [] [T]here is a dispute of whether vehicles are necessarily impounded as a matter of course for invalid registration.

Id. at 9.

    B.     <u>Government's Response</u> (Dkt. No. 42)

The government replies that Judge Duffin correctly concluded the search was lawful as a search incident to arrest and under the automobile exception. Dkt. No. 42 at 4-5. The government argues that the November 19, 2022 suspect alert and the fact that the defendant was driving the Malibu without a valid registration placed the ownership of the car in question. Id. While Judge Duffin distinguished the <u>Travis</u> case cited by the government, the government maintains that <u>Travis</u> provides a sufficient basis to believe that the officers could have searched the vehicle to determine whether there was evidence of

21

ownership or registration. Id. at 7. The government defends the inventory search because the Malibu was not registered, could not legally be parked under standard operating procedures and ordinances and therefore had to be impounded and towed. Id. at 8-10. Without a driver at the scene and with the defendant under arrest, the car could not be driven away (and Childs was not the registered owner). Id. at 11. Finally, the government points out that the officers were not obligated to find an alternative to towing the Malibu. Id. at 12 (citing Cartwright, 630 F.3d at 613; Colorado v. Bertine, 479 U.S. 367, 373-74 (1987)).

While Judge Duffin did not address the inevitable discovery doctrine because he found the search valid on other grounds, the government argues that the doctrine applies. Id. at 14. The government says that once the officers pulled the defendant over, his arrest, the impoundment—and the search—were inevitable. Id.  Finally, according to the government, no evidentiary hearing is required because the entire encounter was captured on body camera footage and provided to the court. Id. at 15. The government argues that there are no disputed issues of fact that are material. Id. at 16.

## V.    Analysis

The Fourth Amendment to the Constitution provides that:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

22

U.S. CONST. Amend. IV. "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967).

As for evidentiary hearings,

> "[i[t is well established that '[e]videntiary hearings are not required as a matter of course.'" [United States v. Schreiber, 866 F.3d 776] at 781 [7th Cir. 2017]] . . . (quoting United States v. McGaughy, 485 F.3d 965, 969 (7th Cir. 2007)). "District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion." [United States v.] Curlin, 638 F.3d [562] at 564 [(7th Cir. 2011)]. To obtain an evidentiary hearing relating to the suppression of evidence, the defendant "bears the burden of making a prima facie showing of illegality." United States v. Randle, 966 F.2d 1209, 1212 (7th Cir. 1992). "Reliance on vague, conclusory allegations is insufficient." Id. Instead, the "defendant must present 'definite, specific, detailed, and nonconjectural' facts that justify relief." Id. (quoting United States v. Hamm, 786 F.2d 804, 807 (7th Cir. 1986)).

United States v. Edgeworth, 889 F.3d 350, 353-54 (7th Cir. 2018).

A.    Search Incident to Arrest

Police officers may conduct a warrantless search of a vehicle if the arrestee was within reaching distance of the passenger compartment (including the glove compartment) at the time of the search or if it is reasonable to believe that the vehicle contains evidence of the offense of arrest. U.S. v. Reedy, 989 F.3d 548, 555 (7th Cir. 2021) (quoting Gant, 556 U.S. at 351). The search of the vehicle is "keyed to the offense of arrest." Paige, 870 F.3d at 702. Officers must have probable cause for the arrest, meaning the totality of the facts and circumstances within the officers' knowledge are sufficient for a prudent person

23

of reasonable caution to believe that the suspect is committing, is about to commit or already has committed a violation of the law. Id. at 699-700 (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)).

At the time Sida arrested the defendant, he knew several things: he'd seen the defendant driving a car with obstructed registration stickers; a DOT check on the car's license plate revealed that the plate did not list to the car; the vehicle was not registered (that information came from the defendant); the defendant did not have a driver's license (that information, too, came from the defendant); there was a March 24, 2022 warrant from Dane County for the defendant's arrest in Case No. 2021CM001103 (charging him with unlawful phone use—threatening harm), issued because the defendant did not appear for a hearing; the defendant had two active MPD suspect alerts (one for theft of movable property on November 19, 2022) and one for burglary party to a crime and disorderly conduct DV-related on October 5, 2022; the car the defendant had been driving—the Malibu was an object of a crime for whatever incident had occurred that resulted in the November 19, 2022 suspect alert; the VIN of the vehicle did not list to the defendant's girlfriend; and the driver's side window of the car had a hole in it and was shattered.

Sida stated in his report that he arrested the defendant on multiple offenses: the "OAR, the Dane County warrant and the two suspect alerts." Dkt. No. 30-2 at 2. The only question for Judge Duffin or this court to answer in determining whether the search was conducted incident to this arrest is whether it was reasonable for the officers to believe that the vehicle contained

24

evidence of any of those offenses. In <u>Edwards</u>, the Seventh Circuit observed that in <u>Gant</u>, the U.S. Supreme Court did not indicate "whether the 'offense of arrest' is limited to the crime for which the defendant was 'actually arrested' or includes other crimes that the officer had probable cause to believe occurred." <u>Edwards</u>, 769 F.3d at 515. The appellate court opined, however, that "Justice Scalia's concurrence in *Gant* suggests both would qualify." <u>Id.</u> (quoting <u>Gant</u>, 556 U.S. at 353, Scalia, J., concurring, "I would hold that a vehicle search incident to arrest is *ipso facto* 'reasonable' only when the object of the search is evidence of the crime for which the arrest was made, or of another crime that the officer has probable cause to believe occurred.").

More recently, the Seventh Circuit held in <u>Travis</u> that a search incident to arrest was proper when the defendant was arrested for "(among other possible offenses) misuse of dealership plates." <u>Travis</u>, 2023 WL 7271076, at *2. The court reasoned that the dealer plates contradicted the defendant's claim that a woman owned the car, particularly when the defendant could not produce proof of ownership such as the car's title or registration. <u>Id.</u> The Seventh Circuit opined that "evidence of a vehicle's ownership and registration is regularly contained in the glovebox of a vehicle." <u>Id.</u> Because ownership was an element of the offense of arrest (misuse of dealership plates), the court concluded that it was reasonable to search the car for evidence of ownership. <u>Id.</u>

The court does not need to decide whether the "offense of arrest" means something more than the offense for which the searching officer arrested the

25

defendant. It is true, as the defendant maintains, that *one* of the offenses for which Sida cited the defendant was operating a vehicle without registration, and that proof of ownership is not an element of this offense. But, as Judge Duffin recounted, Sida *also* arrested the defendant on the November 19, 2022 suspect alert. Sida knew that that alert was for theft of movable property eleven days prior to the date he'd pulled the defendant over. He knew that the Malibu the defendant was driving when Sida pulled him over was an "object of crime" for that suspect alert. He knew that the license plate on the car didn't list to the car. He knew that the car was not registered, and that the VIN on the car did not match to the person the defendant identified as his girlfriend. Considering those facts in combination, it was reasonable for Sida to believe that the "theft" that had resulted in the November 19, 2022 suspect alert might have been theft of the Malibu, and that the Malibu could contain evidence relating to that theft.

The defendant insists—repeatedly—that he told the officers that the car belonged to his girlfriend, as if this is sufficient to resolve the issue of whether the car was stolen. But the facts in Sida's possession made it reasonable for him to question the reliability of that assertion. The defendant asserts repeatedly that the car had not been reported stolen, as one would expect if a person's car had been stolen and they did not know who had done it. But a suspect alert had been issued by the MPD for the defendant for theft of movable property, and an object of the crime was the Malibu. So someone had

26

reported to the MPD that the defendant had stolen movable property (such as, perhaps, a car) and that the Malibu was an "object" of that report.

The defendant maintains that the court must hold an evidentiary hearing, but he has not identified any disputed issues of material fact that would affect the outcome of his motion. He states—as an established fact—that the officers hadn't reviewed the police reports underlying the suspect alerts. The government hasn't contested that, and it is immaterial—Sida knew that the suspect alert was for theft of movable property eleven days earlier and that the Malibu was an object of the crime. The defendant states that the suspect alerts did not contain enough information to give the officers "probable cause" to search the car. That's a legal issue, and it's the wrong one. The question for the search-incident-to-arrest exception is whether it was reasonable for the officers to believe that the car contained evidence of the offense (in this case, of theft of movable property). The defendant states that there is no evidence in the record that the suspect alert described the property taken. That is not disputed. Sida said that he learned that information while waiting for other officers to arrive. It is not clear what facts the defendant believes the court would glean from an evidentiary hearing that would resolve any disputed facts material to his motion.

The search was valid incident to the defendant's arrest on the November 19, 2022 suspect alert. But even if it weren't, other exceptions to the warrant requirement apply.

B.    Automobile Exception

Under the automobile exception to the warrant requirement, police may conduct a warrantless search of an automobile if they have probable cause to believe the vehicle contains evidence of criminal activity. <u>Edwards,</u> 769 F.3d at 514. "Probable cause to search exists where, based on the known facts and circumstances, a reasonably prudent person would believe that contraband or evidence of a crime will be found in the place to be searched." <u>United States v. Williams</u>, 627 F.3d 247, 251 (7th Cir. 2010). The search may extend to "any area of the vehicle in which the evidence might be found." <u>Gant</u>, 556 U.S. at 347.

The automobile exception is different from the search-incident-to-arrest exception because for the automobile exception to apply, the evidence need not be tied to the offense of arrest. Sida knew that the defendant had been driving a car whose plates did not match it. He knew that the car was not registered and that the VIN did not match the person the defendant claimed owned the car. He knew that there was a suspect alert out for the defendant for theft of movable property eleven days earlier, and that the very Malibu the defendant had been driving was an object of that crime. He knew that the defendant did not have a driver's license. He knew the driver's side window of the car had a hole in it and was shattered. These facts are sufficient to lead a reasonably prudent person in the officers' position to believe that the Malibu may have been stolen.

The defendant argued to Judge Duffin that an evidentiary hearing was necessary to determine whether there was damage to the car suggesting it had been stolen or operated without consent. But the body camera footage shows that the driver's window was smashed and Officer Sida knew that the same vehicle had been a subject of the suspect alert. Even if Sida did not have a single, other detail than the ones the court has recounted, those facts were sufficient to give him probable cause to search the vehicle for evidence related to the theft. No additional evidence is necessary for the court to reach that conclusion.

## C. Inventory Search

An inventory search "is another recognized exception to the warrant and probable-cause requirements of the Fourth Amendment." U.S. v. Cherry, 436 F.3d 769, 772 (7th Cir. 2006) (citing United States v. Wilson, 938 F.2d 785, 788 (7th Cir. 1991)). The search is permissible if conducted under standard police procedures aimed at protecting the person's property and the police from allegations that the property has been stolen, lost or damaged. Id. The court considers whether "(1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures." Cartwright, 630 F.3d at 614 (citing U.S. v. Jackson, 189 F.3d 502, 508-09 (7th Cir. 1999)). The decision to conduct an inventory search is separate from the decision to seize the car. Id.

The court agrees with the defendant that, at the time he was arrested, the officers were not towing *his* vehicle. However, Officer Sida's decision to have the car towed was covered by the Milwaukee Police Department's Standard Operating Procedure 610 for towing *unregistered* vehicles. Dkt. No. 31-3. Consistent with Milwaukee City Ordinance Traffic Code 101-24.7(2)(a), (3)(a), the SOP provides that "No unregistered motor vehicle may be located upon any alley, street, highway, public place, or thoroughfare within the city." Dkt. No. 31-3 at 10. Sida instructed another officer at the scene to arrange for a safekeeping tow. Under SOP 610.20(B), a safekeeping tow applies when "the owner/driver is unable to authorize a tow," the vehicle's "[o]wnership is in question" and/or the car appears "as 'possibly stolen', e.g. column damage, but not yet reported." Id. at 4.

Based on the undisputed evidence in the record, the tow was reasonable because the vehicle was unregistered, could not be legally parked on the street (because it was unregistered), the owner (or the person the defendant said was the owner) was not present to authorize a tow and the ownership was in question. The Fourth Amendment does not require that Sida offer alternatives to impoundment. Cartwright, 630 F.3d at 615 (citing Bertine, 479 U.S. at 373–74).

At that point, the search was authorized under SOP 610.05(B) which permits a search of the "entire vehicle accessible by key, including the passenger compartment, glove box and trunk." Dkt. No. 31-3 at 1. Sida complied with that requirement. The SOP also advises that officers must

30

activate their body camera while conducting the search. Id. Sida activated his body camera during the search. While the record doesn't show that he completed a Tow Authorization Report, the Seventh Circuit has held that "minor deviations from department policy do not render an inventory search unreasonable." Cartwright, 630 F.3d at 616 (citing United States v. Lomeli, 76 F.3d 146, 148–49 (7th Cir.1996)).

The record establishes that Officer Sida repeatedly stated that the vehicle was not registered, the VIN and plates didn't match the defendant or Childs (whom the defendant said owned the vehicle) and Sida said that it was a safekeeping tow. In his report, Sida referenced the firearm and the cigarettes, but also stated that he located a yellow iPhone with a pink case in the console which was later inventoried under MPD INV #22043801. Dkt. No. 30-2 at 2. Sida also referenced a black purse and debit card belonging to Childs, which he said were "inventoried under safekeeping with CHILDS as the claimant under MPD INV #22043802_1." Id. The entire search was captured on Sida's body camera. Dkt. No. 31-2. His alleged failure to complete the tow authorization report was a minor deviation, particularly when everything had been accounted for, inventoried and captured on video. The record supports a finding of a valid tow and inventory search.

The defendant argues that the court must hold an evidentiary hearing to determine whether the police would have impounded the car if they hadn't recovered the firearm, and to determine whether MPD impounded firearms for unlawful registration. Again, those facts are not material to the resolution of

31

the defendant's motion. The court has found that the officers had reason to tow the vehicle under the relevant ordinances and standard operating procedures. And the tow was not solely because the car was unregistered—it was because it was unregistered and could not be left parked on the street and there was no owner present to authorize the tow.

D.    Inevitable Discovery

Under the inevitable discovery doctrine, illegally seized evidence need not be suppressed if the government can prove by a preponderance of the evidence that the evidence inevitably would have been discovered by lawful means. Nix v. Williams, 467 U.S. 431, 442–44 (1984). To satisfy this burden, the government must demonstrate (1) that it had, or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence and (2) that it would have conducted a lawful search absent the challenged conduct. United States v. Marrocco, 578 F.3d 627, 637–38 (7th Cir. 2009).

The government has established by a preponderance of the evidence that the firearm and other contents of the car would have been discovered under the inevitable discovery doctrine. There was a warrant for the defendant's arrest; once the officers executed that warrant and arrested the defendant, there was no one to drive the car and it could not be left on the street because it was not registered. Ownership of the vehicle was in question—regardless of the defendant's assertion that Childs was his girlfriend and that she owned the car, neither the plates nor the VIN matched to Childs and she was not present.

32

The driver's side window was smashed. Officer Sida knew that the Malibu was a subject of the November 19, 2022 suspect alert.

It is not speculation to conclude that the firearm would have been inevitably discovered by lawful means—whether because the contents of the car would need to be inventoried due to the tow or because the officers would obtain a warrant to search it. See United States v. Stotler, 591 F.3d 935, 940 (7th Cir. 2010) (applying the inevitable discovery doctrine where the officers would not have allowed a truck to remain on the street and, in all likelihood, would have impounded the truck and towed it away). If Officer Sida had not searched the Malibu when he did, law enforcement would have discovered the firearm at some other time.

## VI. Conclusion

The court **OVVERRULES** the defendant's objection. Dkt. No. 41.

The court **ADOPTS** Judge Duffin's recommendation. Dkt. No. 40

The court **DENIES** the defendant's motion to suppress. Dkt. No. 30.

The court will communicate with the parties regarding the next steps in the litigation.

Dated in Milwaukee, Wisconsin this 9th day of September, 2024.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

33